UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

GAUTAM PATEL, JALAL BHUIYAN,                :
CONRAD DSOUZA, VICTOR MONTEIRO,       :
SIMON MALDONADO, MOHAMMED FARID UDDIN, :
FAYSAL ABEDIN, ABDUL ALI, JAVIER          :
SOBERAN PEREZ, MOHAMMED TAHER,         :
RAJINDER SINGH,  HARJINDER SINGH,        :
JESUS MALDONADO, SANTIAGO REYES,       :
ANWAR HUSSAN MALIK, MOHAMMED JAHANGIR :
ALAM, NEVILLE PEREIRA, and ALFREDO      :
("PABLO JUNIOR") MALDONADO, on behalf    :
of themselves individually and all others similarly situated, :
                                    :

              Plaintiffs,         :
    v.                         :
                                 :

BALUCHI'S INDIAN RESTAURANT,         :
KRAJ FOODS, INC., d/b/a/             :
BALUCHI'S, PARAMOUNT FOODS, INC., d/b/a/  :
BALUCHI'S, GATEWAY FOODS, INC, d/b/a/    :
BALUCHI'S, DOES 1-10, d/b/a/ BALUCHI'S and  :
RAKESH AGGARWAL                :
                                 :

             Defendants.      :

---------------------------------------------------------------------x

Civ. Action No.:
08 CIV 9985 (RJS)(THK)


## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF:
## (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT, (2) CERTIFICATION OF THE SETTLEMENT CLASS, (3) APPROVAL OF THE FLSA SETTLEMENT, AND (4) APPROVAL OF CLASS COUNSEL'S REQUEST FOR ATTORNEY'S FEES AND <u>REIMBURSEMENT OF EXPENSES</u>


GISKAN SOLOTAROFF ANDERSON & STEWART LLP
Catherine E. Anderson (CA 5129)
Darnley D. Stewart (DS 0835)
11 Broadway, Suite 2150
New York, NY 10004
(212) 847-8315

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.  Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.  The Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

III.  The Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    A.  Settlement Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  The Settlement Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.  Notice To The Class By Direct Mail and Publication . . . . . . . . . . . . . . . . . . . .4

    D.  The Claims Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    E.  Opt-Outs and Objectors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

IV.  The Settlement Class Satisfies Rule 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    A.  Rule 23(a)(1) – The Settlement Class Is So Numerous That Joinder Of
       All Members Is Impracticable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

    B.  Rule 23(a)(2) – The Claims Of The Settlement Class Arise From
       Common Questions Of Law And Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

    C.  Rule 23(a)(3) – Named Plaintiff's Claims Are Typical Of The
       Claims Of The Settlement Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    D.  Rule 23(a)(4) – Plaintiffs And Class Counsel Will Fairly And
       Adequately Protect The Interests Of The Settlement Class . . . . . . . . . . . . . . . 8

    E.  The Settlement Class Is Appropriate Pursuant To Rule 23(b)(3) . . . . . . . . . . . .9

    F.  Certification of the "Hybrid" Rule 23 Class And FLSA Collective
       Action Is Appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V.  The Settlement Is Fair, Reasonable And Adequate Under Rule 23(e) . . . . . . . . . . . . . . 11

    A.  Complexity, Expense, and Duration of the Litigation . . . . . . . . . . . . . . . . . . . .12

    B.  Reaction of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

C.    Stage of the Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

D.    Risks of Establishing Liability and Damages  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

E.    Risk in Maintaining the Class Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

F.    Ability to Withstand a Greater Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

G.    Range of Reasonableness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

H.    The Settlement Was Negotiated At Arm's Length By Experienced
       Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

VI.    Approval of the Settlement of the FLSA Claims Is Also Appropriate . . . . . . . . . . . . . . . .19

VII.   Class Counsel's Request For Attorney's Fees And Reimbursement
       of Expenses Should Be Approved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A.    The Time and Labor Expended . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

B.    The Magnitude and Complexity of the Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . 21

C.    Risk of Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

D.    Quality of Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

E.    The Fee Request In Light Of The Result Achieved . . . . . . . . . . . . . . . . . . . . . . . . . 23

F.    Public Policy Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

VIII.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

**Federal Cases**

*A.H. Phillips v. Walling*, 324 U.S. 490 (1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Banyai v. Mazur*, 2007 U.S. Dist. LEXIS 22342 (S.D.N.Y. Mar. 27, 2007) . . . . . . . . . . . . . . . .16

*Barrentine v. Askansas-Best Freight Sys. Inc.*, 450 U.S. 728 (1981). . . . . . . . . . . . . . . . . . . . . . .22

*Brooks v. Am. Export Indus., Inc.*, 1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) . . . . .17

*Brunson v. The City of New York*, 2000 U.S. Dist. LEXIS 18434  (S.D.N.Y. Dec. 21, 2000) . . .22

*Cagan v. Anchor Sav. Bank FSB*, 1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990) . . . . .17

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 7

*Cent. States Southeast & Southwest Areas Health & Welfare Fund
v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007) . . . . . . . . . . . . . . . . . .23

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Clark v. Ecolab, Inc.*, 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010). . . . . . . . . . . . . 11

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) . . . . . . . . . . . . . . . .6

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . .8, 10

*Damassia v. Duane Reade, Inc.*, 2009 U.S. Dist. LEXIS 77489 (S.D.N.Y. July 24, 2009). . . . . . 11

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 19

*Duchene v. Michael Cetta, Inc.*, 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009) . . . . . . 11

*Eisen v. Carlisle & Jacqueline*, 391 F.2d 555 (2d Cir. 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Foti v. NCO Financial Systems, Inc.*, 2008 U.S. Dist. LEXIS 16511 (Feb. 20, 2008 E.D.N.Y.). .12

*Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174 (W.D.N.Y. 20005) . . . . . . . . . . . . . . . . . . . *passim*

*Gilliam v. Addicts Rehab. Ctr. Fund*,
2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . .. *passim*

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . 21

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007*)* . . . . . . . . . . . . . . . 9

*In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984). . . . . . . . . . . . . . . . .17

*In re American Bank Note Holographics*, 127 F. Supp. 2d. 418 (S.D.N.Y 2001). . . . . . . . . . . . 13

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) . . . . . 12, 14

*In re Crazy Eddie*, 824 F. Supp. 320 (E.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re EVVI Career Colls. Holding Corp. Sec. Litig.*,
2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*In re Medical X-Ray Film Antitrust Litig.*,
1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998).. . . . . . . . . . . . . . . . . . . . . . . . . .14, 15, 19

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998). . . . . . . . . . . .23

*In re PaineWebber Ltd. Partnerships Litig.*,  171 F.R.D. 104 (S.D.N.Y. 1997). . . . . . . . . . . . . 18

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999). . . . . . . . . . . . . . . . . . . . . .24

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 14

*Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594 (S.D. Fla. 1991). . . . . . . . . . . . . . . . . . . . . . .6

*Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006) . . . .9, 10

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) . . . . . . . . . . . . . . . .19

*Manning v. N.Y. Univ.*,2001 U.S. Dist. LEXIS 12697 (S.D,N.Y. Aug. 22, 2001) . . . . . . . . . . . .20

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 7

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . .19

*McMahon v. Olivier Cheng Catering and Events, LLC*,
2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
2009 U.S. Dist. LEXIS 27899, (S.D.N.Y. Mar. 31, 2009). . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Officers of Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)................17

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). ...............................24

*Reyes v, Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009) ...... 10, 17

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,*
2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003)................................13

*Taft v. Ackermans,* 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007)................23

*Torres v. Gristede's Operating Corp.,*
2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) ...........................7, 9

*Velez v. Majik Cleaning Serv.,* 2007 U.S. Dist. LEXIS 46223(S.D.N.Y. June 22, 2007) ...11,16, 24

*Webster v. Smithfield Assocs. LLC d/b/a Pastis Restaurant, et al (Balthazar),*
08-CV-166 (LTS) (S.D.N.Y. Mar. 9, 2009)..........................................17

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982)..................................11

I.   **Introduction**

Plaintiffs submit this memorandum of law in support of their motion for (1) final approval of the class action settlement; (2) certification of the settlement class; (3) approval of the FLSA settlement; and (4) an award of Class Counsel's fees and reimbursement of expenses. The settlement provides for a total of $967,000 in monetary relief, resolves all claims in this wage and hour class and collective action, and satisfies all criteria for final approval.

Plaintiffs are current and former employees of Defendant Baluchi's Indian Restaurant ("Baluchi's"), which at all relevant times was owned and operated by Defendant Rakesh Aggarwal. Plaintiffs have been employed by Baluchi's as waiters, delivery persons, dishwashers and/or cooks at some time during the period November 18, 2002, to the present.  All Plaintiffs worked in one or more of the Baluchi's restaurant locations in New York.

Plaintiffs have alleged Defendants violated federal and New York State labor laws by failing to pay Plaintiffs the minimum wage and overtime differential, making unlawful deductions and misappropriating tips from those Plaintiffs in the positions of waiter and delivery.  This action was brought as an opt- in collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and an opt-out Rule 23 class action for claims pursuant to the New York Labor Law ("NYLL") § 190 *et seq.* and § 650 *et seq.*, to recover the wages and tips owed, as well as statutory and liquidated damages.

On January 5, 2011, the Court entered an order granting preliminary approval of the settlement and certification of the Class for settlement purposes and directed that notice be provided to Class members (the "Preliminary Order").  In accordance with the Preliminary Order, Plaintiffs submit this memorandum of law in support of final approval of the settlement and an award of Class

Counsel's fees and reimbursement of expenses.

## II.   The Litigation

On November 18, 2008, Plaintiffs commenced this action as a putative class and collective action for wage and hour violations pursuant to the FLSA and NYLL to recover wages owed to them by Defendants. Plaintiffs have worked at Baluchi's in the position of waiter, dishwasher, delivery and/or cook. The procedural history of the litigation and the discovery undertaken in this action are set forth in the Declaration of Catherine E. Anderson In Support Of Final Approval Of The Class Action Settlement And An Award Of Attorney's Fees And Expenses, dated March 3, 2011 ("Anderson Declaration" or "Anderson Decl."), submitted herewith.

## III.   The Settlement

### A.   Settlement Negotiations

On February 11, 2009, Plaintiffs' counsel met with prior defense counsel, Andrew Fallek, to discuss potential resolution of this action. The parties agreed to explore potential settlement through a private mediator. Anderson Decl. ¶ 17. On March 23, 2009, a full day private mediation session was held with an experienced employment law mediator, Carol A. Wittenberg of JAMS. *Id.*, ¶ 18. The majority of Plaintiffs attended this mediation session, but a settlement was not reached. *Id.* Over the next several months, Ms. Wittenberg continued to attempt to facilitate settlement discussions between the parties, but no agreement was reached. *Id.*

On October 14, 2009, Defendants served Offers of Judgment on all Plaintiffs who had opted-in to the collective action pursuant to the FLSA. Each of the Offers of Judgment was conditioned on acceptance by all FLSA opt-in Plaintiffs, which did not occur. Anderson Decl. ¶ 19. On October 27, 2009, the Court referred the Litigation to Magistrate Judge Katz for settlement purposes and

stayed discovery. *Id.*, ¶ 20.

Between December 2009 and February 2010, four formal mediation sessions presided over by Magistrate Judge Theodore H. Katz were held in Court, with the great majority of the FLSA opt-in Plaintiffs in attendance. Anderson Decl. ¶ 21. Each mediation session lasted several hours. *Id.* Although the parties believed they had reached a settlement in principal on February 19, 2010, the settlement broke down when the parties attempted to memorialize the agreement in writing and additional negotiations were necessary. *Id.* Between March 2010 and June 2010, the parties continued to negotiate the terms of the settlement with the assistance and oversight of Magistrate Judge Katz. *Id.*, ¶ 22.

The Settlement Agreement is the product of these long and hard-fought negotiations over the course of many months. The negotiations between the parties were overseen initially by a private mediator and ultimately by Magistrate Judge Katz, and included the active participation of the FLSA opt-in Plaintiffs.

## B.   The Settlement Agreement

The Settlement creates a total monetary fund valued at approximately $967,000. Of this amount, $707,000 will be used to pay the claims of the FLSA opt-in Plaintiffs in the amounts agreed upon during the final mediation session before Magistrate Judge Katz on February 19, 2010, and based on the extensive damages analyses of the FLSA opt-in Plaintiffs prepared by both parties for mediation. Anderson Decl. ¶ 24. The amounts to be paid to the FLSA opt-in Plaintiffs are based upon the following criteria:   the position held at Baluchi's, the number of weeks worked at Baluchi's, the number of hours worked per week and the wages earned per week. According to Plaintiffs' counsel's damages calculations, the amounts to be paid to the opt-in Plaintiffs reflect, on

3

average, approximately 20% of their total damages (including punitive damages) which potentially could be recovered at trial. *Id.*, ¶ 25.

From the $967,000 Settlement Fund, the amount of $100,000 (less the reasonable costs of the Settlement administration[1] and a portion of Class Counsel's fees up to $10,000, as awarded by the Court) will be used to pay eligible Class Members who did not opt-in to the FLSA collective action, who do not opt-out of the Settlement, and who timely file eligible claims post marked by March 7, 2011. These claims will be evaluated based on the same criteria used to evaluate the claims of the FLSA opt-in Plaintiffs: the position held at Baluchi's, the number of weeks worked at Baluchi's, the number of hours worked per week and the wages earned per week. The claims will be paid pro rata, up to a maximum amount of $8,000. At this time, eight claims have been filed pursuant to the Notice. Anderson Decl. ¶ 26.

Class members who participate in the Settlement and who were employed by Baluchi's on January 5, 2011, the date of entry of the Preliminary Order, will receive their Settlement payment in one lump sum within six months of the Effective Date. Class members who were former employees of Baluchi's as of January 5, 2011, will receive their payments in 5 installments every six months, commencing within six months of the Effective Date. Anderson Decl. ¶ 28.

### C.    Notice To The Class By Direct Mail and Publication

On February 4, 2011, in accordance with the Preliminary Order, the Settlement Administrator provided timely Notice of the settlement and the claim form by United States Mail to more than 90 Class members who did not opt- in to the FLSA action and whose last known

---

[1]At this time, the administrative fees of the Settlement Administrator are approximately $14,243.52, and some additional administrative expenses are anticipated. Anderson Decl. ¶ 27.

address was on file with Baluchi's.  See Declaration of Christina Peters-Stasiewicz Regarding Notice

Administration at ¶¶ 6, 8 ("Declaration of Notice"), attached as Exhibit A to the Anderson Decl.  The

Notice and claim form were provided to Class members in English, Spanish and Bengali.  *Id.*, ¶ 8.

Notice was also timely made by publication on February 3, 2011, in *El Diaro* and *Bangla Times*.

*Id.*, ¶ 13.

### D.    The Claims Process

Members of the Class who opted in to the FLSA collective action and/or who execute an

FLSA release will receive the amounts negotiated on their behalf and agreed to during the mediation

sessions held before Magistrate Judge Katz, as set forth in the Settlement Agreement.  Anderson

Decl., ¶ 24.  Class members who did not opt-in to the FLSA collective action and who timely submit

a completed claim to the Settlement Administrator post marked by March 7, 2011, may be eligible

to receive a pro rata share of the $100,000, less a portion of Class Counsel's attorney's fees and

administrative expenses, up to a maximum of $8,000 per claimant. At this time, the Settlement

Administrator has received eight claims from such Class members.  *Id.*, ¶ 26.

### E.    Opt-Outs and Objectors

In accordance with the Preliminary Order, Class members have until March 9, 2011, to opt-

out of the settlement and until March 23, 2011, to object to the settlement.  At this time, there have

been no opt-outs  or objectors. Anderson Decl. ¶ 29.

### IV.   The Settlement Class Satisfies Rule 23

Plaintiffs request certification of a Class for settlement purposes, which the parties have

agreed to define as:

All persons employed by a Baluchi's Indian Restaurant during the period

November 18, 2002, through the present in the position of waiter, delivery, dishwasher and/or cook.

As set forth herein, the Class meets all requirements of Rule 23 and should be certified for settlement purposes.

### A.   Rule 23(a)(1) – The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable

In addition to the FLSA opt-in Plaintiffs, more than 90 persons were identified as Class members from the records of Baluchi's, thus making the Class size greater than100 persons. Declaration of Notice, ¶¶ 6, 8,  Anderson Decl., Ex. A. The United States Court of Appeals for the Second Circuit has recognized that as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (internal citation omitted).

### B.   Rule 23(a)(2) – The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact

The "commonality" requirement of Rule 23(a)(2) is met "if plaintiffs' grievances share a common question of law or fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (per curiam). Rule 23(a)(2) requires only that the class members share at least one question of fact or law in common. *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D. Fla. 1991) (the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members").

In *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009), a wage and hour action brought on behalf of restaurant workers, this Court found Rule 23(a)(2) satisfied where, as here, Plaintiffs and the Class members share common

6

issues of fact and law, including whether, "Defendants required Plaintiffs to share their tips with ineligible employees, failed to pay Plaintiffs at the proper overtime rate, . . . failed to pay Plaintiffs for hours worked off-the-clock, failed to pay Plaintiffs spread-of-hours pay . . . and failed to keep accurate time records." 2009 U.S. Dist. LEXIS 27899, at **10-11; *see also, Torres v. Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039, at **39-40 (S.D.N.Y. Sept. 29, 2006) (Rule 23(a)(2) satisfied in wage and hour action).

###### C. Rule 23(a)(3) – Named Plaintiffs' Claims Are Typical Of The Claims Of The Settlement Class

The typicality requirement of Rule 23(a)(3) is met for many of the same reasons as the commonality requirement. "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A*, 126 F. 3d at 376. A claim is typical if the "disputed issue of law or fact 'occup[ies] the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999) (*quoting Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995)).

Here, the claims of the named Plaintiffs[2] and the claims of all Class members derive from Defendants' alleged common violations of the New York wage and hour laws. The Plaintiffs' claims are typical of all Class members because they have alleged that: (a) they worked in the

---

[2]The original named Plaintiffs are Gautam Patel (former Baluchi's waiter), Jalal Bhuiyan (former Baluchi's cook), Conrad Dsouza (former Baluchi's waiter), Victor Monteiro (current Baluchi's waiter), Simon Maldonado (current Baluchi's delivery), Mohammed Farid Uddin (former Baluchi's cook), Faysal Abedin (former Baluchi's cook), Abdul Ali (former Baluchi's cook), Javier Soberan Perez (current Baluchi's cook), Mohammed Taher (former Baluchi's cook), Rajinder Singh (current Baluchi's cook), Harjinder Singh (former Baluchi's cook), Jesus Maldonado (current Baluchi's dishwasher), and Santiago Reyes (former Baluchi's dishwasher).

positions of waiter, delivery, dishwasher or cook at Baluchis; (b) as a result of the same alleged course of conduct by Defendants in failing to pay minimum wage, overtime and tips, they suffered the same injuries as members of the Class they seeks to represent; and (c) their claims are based on the same legal issues as the claims of members of the Class they seek to represent. *See Mohney*, 2009 U.S. Dist. LEXIS 27899, at * 11 (Rule 23(a)(3) satisfied in wage and hour action brought on behalf of restaurant workers "because Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (typicality requirement satisfied for overtime violation claims).  By commencing this action and advancing their own claims, the named Plaintiffs have advanced the claims of the other members of the Class.  The typicality requirement has been satisfied.

### D.       Rule 23(a)(4) – Plaintiffs And Class Counsel Will Fairly And Adequately Protect The Interests Of The Settlement Class

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involve two considerations:  (1) whether the plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the plaintiff has any interests antagonistic to the class.  *Eisen v. Carlisle & Jacqueline*, 391 F.2d 555, 562 (2d Cir. 1968).

Both prongs of the Rule 23(a)(4) adequacy requirement are satisfied here.  First, Plaintiffs' counsel, Giskan Solotaroff Anderson & Stewart LLP, specializes in plaintiffs' side

employment and class action litigation.[3]  Second, the named Plaintiffs have alleged Defendants'

violation of the NYLL, the same claims of the Class they seek to represent

### E.   The Settlement Class Is Appropriate Pursuant To Rule 23(b)(3)

Class certification is appropriate under Rule 23(b)(3) where:  (1) common questions of

law or fact predominate over individual questions, and  (2) a class action represents a superior

method for the fair and efficient adjudication of the controversy.

Here, all members of the Class were subjected to Defendants' wage and hour practices

which have been alleged to violate the New York minimum wage and overtime laws.  This Court

has found the predominance requirement readily satisfied in similar actions alleging failure to

pay minimum wage and overtime.  *See Mohney*, 2009 U.S. Dist. LEXIS 27899, at ** 10-11

(S.D.N.Y. Mar. 31, 2009)(in wage and hour case brought on behalf of restaurant workers, this

Court held "[c]ommon factual allegations and a common legal theory predominate over any

factual or legal variations among Class Members"); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239

F.R.D. 363, 373 (S.D.N.Y. 2007)(whether employees were supposed to be paid overtime was

"about the most perfect question[] for class treatment"); *Torres*, 2006 U.S. Dist. LEXIS 74039, at

*53 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to

deny employees overtime pay," and "this issue predominates over any individual calculations of

overtime wages."); *see also, Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307, at

*23 (D.N.J. July 10, 2006)("a similar legal question: whether the alleged failure to pay

---

[3] *See* Firm Resume of Giskan Solotaroff Anderson & Stewart LLP attached as Exhibit B
to the Anderson Decl.

[plaintiffs] for all hours worked . . . . violated the applicable state wage and hour laws. . . .

predominate[s] over any factual variations").

Indeed, the only individualized issues in this case pertain to the amount of each Class

member's damages.  Individualized damages calculations, however, do not defeat predominance.

*See Frank v. Eastman Kodak, Co.,* 228 F.R.D. 174, 183 (W.D.N.Y. 20005) (collecting cases

holding that the damages calculations in overtime litigation does not impact the predominance

analysis); *Lenahan,* 2006 U.S. Dist. LEXIS 60307, at *23 (D.N.J. July 10, 2006)(same).  The

predominance requirement has been met.

Class adjudication is superior to individual adjudication because it will conserve judicial

resources and is more efficient for Class members, particularly those who lack the resources to

bring their claims individually.  *See Mohney,* 2009 U.S. Dist. LEXIS 27899, at *11; *Damassia,*

250 F.R.D. at 161, 164.  Plaintiffs and the other members of the Class have earned below the

minimum wage and overtime requirements and have limited financial resources with which to

prosecute individual actions.  English is not the first language of the many Plaintiffs, and some

speak very little English,  further impeding their ability to bring individual actions.  Anderson

Decl., ¶ 2.  Plaintiffs are not aware of any lawsuits that have been filed against Baluchi's by other

workers arising from the same wage and hour allegations.  *Id.*  Use of the class action device here

will achieve economies of scale for Class members, conserve judicial resources by avoiding the

expense of repetitive proceedings, and prevent the possibility of inconsistent rulings on similar

issues and claims.  *See Reyes v. Buddha-Bar NYC,* 2009 U.S. Dist. LEXIS 45277, at *7

(S.D.N.Y. May 28, 2009) (granting Rule 23 class certification of New York state wage and hour

claims on behalf of restaurant workers, holding that "[c]lass adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually.").

### F.    Certification of the "Hybrid" Rule 23 Class And FLSA Collective Action Is Appropriate

Courts routinely approve certification of "hybrid" Rule 23 class and FLSA collective actions. *See Clark v. Ecolab, Inc.*, 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010); *McMahon v. Olivier Cheng Catering and Events, LLC*, 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010); *Duchene v. Michael Cetta, Inc.*, 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009); *Damasia v. Duane Reade, Inc.,* 2009 U.S. Dist. LEXIS 77489 (S.D.N.Y. July 24, 2009). Certification of a hybrid action also is appropriate where, as here, a larger amount of the settlement funds are allocated to the FLSA opt-in class as compared to the Rule 23 opt-out class. *Velez v. Majik Cleaning Serv.,* 2007 U.S. Dist. LEXIS 46223 at * 20-21 (S.D.N.Y. June 22, 2007). Because all requirements of Rule 23 have been met, the Court should grant certification of the Settlement Class.

### V.    The Settlement Is Fair, Reasonable And Adequate Under Rule 23(e)

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must decide whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982). In doing so, the Court is to consider the substantive terms of the settlement, as well as the parties' negotiation process. *Id.*

11

The Second Circuit set forth the standard for consideration of the substantive terms of the settlement under Rule 23(e) in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1997), and requires consideration of nine factors: (i) the complexity, expense and likely duration of the litigation; (ii) the reaction of the Class to the settlement; (iii) the stage of proceedings and the amount of discovery completed; (iv) the risks of establishing liability; (v) the risks of establishing damages; (vi) the risks of maintaining the class action through the trial; (vii) the ability of the defendants to withstand a greater judgment; (viii) the range of reasonableness of the settlement fund in light of the best possible recovery; and (ix) the range of reasonableness in light of all attendant risks of litigation. *Id.*

The Court need not find that each of the nine factors is satisfied; rather, a court "considers the totality of these factors in light of the particular circumstances." *Foti v. NCO Financial Systems, Inc.*, 2008 U.S. Dist. LEXIS 16511, at *16 (Feb. 20, 2008 E.D.N.Y.), citing *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004). Here, consideration of the *Grinnell* factors weighs in favor of granting final approval of the Settlement.

### A.   Complexity, Expense, and Duration of the Litigation

Through this Settlement, Plaintiffs seek to avoid significant expense and delay and to ensure a recovery for the Class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception: because Defendants lack complete business records for the relevant time period, the Plaintiffs and the

other members of the Class would have to prove their damages largely through individual or representative testimony concerning the hours worked and the wages earned by the Baluchi's employees in the positions of waiter, delivery, dishwasher and cook.  In addition, English is not the first language of most Plaintiffs, with some speaking very little English.  Translation services for Spanish and Bengali already have been employed in this action and undoubtedly would be required for further proceedings and at trial, thus adding to the complexity and expense of continued litigation.  Anderson Decl. ¶ 2.  Any judgment following trial most likely would be appealed, further delaying closure.  *See In re American Bank Note Holographics*, 127 F. Supp. 2d. 418, 425 (S.D.N.Y 2001) ("Add on time for trial and appeals, and the class would have seen no recovery for years.  Class counsel properly considered this factor as well.").  The first *Grinnell* factor thus weighs in favor of preliminary approval.

### B.   Reaction of the Class

At this time, no Class member has opted out of, or requested exclusion from, the settlement.  Lack of objection to a settlement strongly favors judicial approval.  *See, e.g., In re EVVI Career Colls. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *6 (S.D.N.Y. July 27, 2007); *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2003 U.S. Dist. LEXIS 8239, at *4 (S.D.N.Y. May 15, 2003) ("The lack of class member objections . . . may itself be taken as evidencing the fairness of a settlement") (internal quotation omitted).

### C.   Stage of the Proceedings

The stage of the proceedings and the amount of discovery the parties have conducted "are important facts to consider in order to ensure that plaintiffs have had access to material to

13

evaluate their case and assess the adequacy of any settlement proposal." *In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888 at *11 (E.D.N.Y. Aug. 7, 1998). This Settlement was reached after a good deal of discovery had occurred, including numerous document production from both sides and the depositions of two key parties. Anderson Decl. ¶¶ 9-16. As a result, the parties had sufficient knowledge of the strengths and weaknesses of the claims to evaluate the merits of settlement. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (the proper inquiry is "whether counsel had an adequate appreciation of the merits of the case before negotiating."). This factor weighs in favor of settlement.

### D.   Risks of Establishing Liability And Damages

In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted); *see also, In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888 at *11 ("In assessing the adequacy of a settlement, a court must balance the benefits of a certain and immediate [relief] against the inherent risks of litigation.")

Here, continued litigation would have presented several significant risks. Defendants would have moved for summary judgment arguing, among other things, that certain classes of Plaintiffs (those in the position of cook and head waiter) were exempt from the wage and hour law protections. Defendants also would have argued on summary judgment that other workers did not actually work the hours they claimed, but instead took scheduled breaks in between their shifts during which they took meals or slept at the restaurant or walked around outside. While

Plaintiffs believe that some, if not all, of their claims would survive summary judgment and proceed to trial, a trial on the merits here would involve substantial risk because of the fact-intensive nature of proving liability under the FLSA and the New York labor laws.

Establishing damages presented Plaintiffs with a difficult, expensive and time consuming task. Because Defendants lack complete business records, Plaintiffs would have been required to prove their damages at trial largely through their own testimony. Many Plaintiffs, moreover, would require translators at trial in order to establish damages, thus adding considerably to the difficulty, expense and duration of trial. This weighs in favor of preliminary approval. *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *11 (S.D.N.Y. Mar. 24, 2008)(settlement approved where, *inter alia*, "[t]he precise magnitude of damages is difficult to assess because Defendants' electronic time records are unreliable, and jury assessments of damages are unpredictable.").

### E.     Risk in Maintaining the Class Action

The settlement was reached before the Plaintiffs moved for Rule 23 Class certification. Defendants would likely oppose such a motion by arguing that individual questions, such as each Class member's hours worked, wages and job responsibilities, would defeat class certification. "The risk that certification might be denied weighs in favor of settlement." *Gilliam v. Addicts Rehab. Ctr. Fund,* 2008 U.S. Dist. LEXIS 23016, at *12 (S.D.N.Y. Mar. 24, 2008). Any class certification order, moreover, would likely be challenged on a motion for decertification or appealed by Defendants. *In re Medical X-Ray Film Antitrust Litig.,* 1998 U.S. Dist. LEXIS 14888 at *14 ("in the absence of settlement, there is no guarantee that defendants will not challenge the maintenance of the class as certified."). Settlement eliminates these risks of establishing and maintaining a class through trial and favors final approval.

15

F.    **Ability to Withstand a Greater Judgment**

It is highly questionable whether Defendants would be able to withstand a greater

judgment.  Plaintiffs' counsel's investigation of the financial condition of Defendants has

revealed that Defendant Aggarwal, the owner and sole shareholder of Baluchi's, has largely

illiquid assets in this country and that liens already have been filed against certain property

holdings of Mr. Aggarwal.  Anderson Decl. ¶ 14.  The Settlement will provide for a lengthy two

and one half year claims payment period because Defendant Aggarwal may be required to sell

some of his properties in order to satisfy the Settlement.  *Id.* ¶¶ 15, 28.  Certain Class members

have expressed concern that should the litigation continue for a number of years, Defendants may

become judgment proof.  *Id.* ¶ 16.  Clearly, the "prospect of a bankrupt judgment debtor down at

the end of the road does not satisfy anyone involved in the use of class action procedures."

*Banyai v. Mazur*, 2007 U.S. Dist. LEXIS 22342 at *11 (S.D.N.Y. Mar. 27, 2007)(internal

citations omitted)).  This factor weighs strongly in favor of final approval of the settlement.  *See*

*Velez*, 2007 U.S. Dist. LEXIS 46223 at * 20-21 (that defendant was a small company unlikely to

be able to satisfy a greater judgment weighed in favor of approving settlement of wage and hour

litigation); *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *12 (S.D.N.Y. Mar. 24, 2008)(settlement

of overtime claims approved where, *inter alia*, it was "uncertain whether Defendants could

satisfy a judgment.").

G.    **Range of Reasonableness**

Under *Grinnell*, the Court is to consider the range of reasonableness of the Settlement in

light of the possible recovery and the range of reasonableness in light of all inherent risks in the

litigation. The adequacy of the Settlement must be judged "not in comparison with the best

16

possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of the plaintiff[s'] case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984).

The $967,000 Settlement Fund represents a good recovery given the attendant risks of litigation. The members of the Class who opted-in to the FLSA collective action will receive on average approximately 20% of their total potential damages had they succeeded on all claims at trial and survived an appeal. Anderson Decl. ¶ 25. At this time, eight claims have been made by members of the Class who did not opt-in to the FLSA collective action. *Id.*, ¶ 26. As a result, each claimant may be eligible to receive up to a maximum amount of $8,000. *Id.* This is comparable to, if not substantially better than, the average per-class member settlement amounts in similar wage and hour cases brought on behalf of restaurant workers. *See Webster v. Smithfield Assocs. LLC d/b/a Pastis Restaurant, et al (Balthazar),* 08-CV-166 (LTS) (S.D.N.Y. Mar. 9, 2009), Exhibit E to the Anderson Decl. (average per-class member settlement amount of approximately $1,258, inclusive of attorney's fees, with awards ranging from $1.90 to $7,129.83); *Reyes,* 2009 U.S. Dist. LEXIS 45277, at **4, 8 ($710,000 fund provided an average per-class member settlement amount of approximately $1,624.71, inclusive of attorney's fees.).

Weighing the benefits against the risks associated with continued litigation and trial, the Settlement Fund is reasonable. "It is well established that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers of Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 628 (9th Cir. 1982); *Brooks v. Am. Export Indus., Inc.,* 1977 U.S. Dist. LEXIS 17313, at **16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery); *Cagan v. Anchor Sav. Bank*

*FSB,* 1990 U.S. Dist. LEXIS 11450, at **34-35 (E.D.N.Y. May 17, 1990) (approving class settlement over objections that recovery was approximately only 1.9% of best possible recovery.). The Settlement Fund falls well within the range of reasonableness - "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank,* 228 F.R.D. at 186 (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).

### H.   The Settlement Was Negotiated At Arm's Length By Experienced Counsel

After consideration of the substantive terms of the settlement, the Court must consider the negotiation process to confirm that the Settlement Agreement was free of collusion. "As long as the integrity of the negotiating process is ensured by the Court, it is assumed that the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides." *In re PaineWebber Ltd. Partnerships Litig.,* 171 F.R.D. 104, 132 (S.D.N.Y. 1997).

The Settlement is free of collusion. The settlement negotiations were overseen initially by a neutral third party mediator, Carol Wittenberg at JAMS, and ultimately were presided over by Magistrate Judge Katz. Anderson Decl. ¶¶ 18, 21, 22. The parties, including the majority of the opt-in Plaintiffs, attended four mediation sessions in Court before Magistrate Judge Katz, and participated in additional telephone conferences with the Court, in order to reach the substantive terms of the Settlement Agreement. Anderson Decl. ¶¶ 21, 22. *See Gilliam,* 2008 U.S. Dist. LEXIS 23016, at *10 (S.D.N.Y. Mar. 24, 2008)(in overtime wage action, the settlement was procedurally fair where "[t]he Court was extensively involved with the settlement discussions that led to this agreement, and recommended that the Parties settle for $450,000.").

As set forth in the firm resume attached as Exhibit B to the Anderson Declaration, Class Counsel's experience in handling class actions and employment matters further support a finding that the negotiations were free from collusion, and a "presumption of fairness" for the parties' settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888, at *16 (no collusion where "settlement was reached through arms-length negotiations by experienced counsel on both sides of the case.").

## VI.   Approval of the Settlement of the FLSA Claims Is Also Appropriate

Plaintiffs request that the Court grant final approval of the settlement of the FLSA wage and hour claims.   FLSA claims are brought as a "collective action" in which employees must affirmatively opt-in to the litigation.  29 U.S.C. § 216(b).  The standard for approval of a FLSA settlement is much lower than for a Rule 23 settlement because the same due process concerns are not implicated. *See McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984)(in contrast with Rule 23, under the FLSA  "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date").

Generally courts will approve an FLSA settlement reached as a result of an adversarial, contested litigation of a *bona fide* dispute. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54, n.8 (11th Cir. 1982) (holding that in a FLSA action, "when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").  Where, as here, the settlement reflects a reasonable compromise of contested issues under the FLSA,  is the product of arm's length negotiations between adversarial

19

parties, and was overseen by a third party mediator and a Magistrate Judge, the court should grant approval. *See Manning v. N.Y. Univ.*, 2001 U.S. Dist. LEXIS 12697, at *37 (S.D,N.Y. Aug. 22, 2001) (recognizing that the Supreme Court has allowed an FLSA settlement for unpaid wages or overtime pursuant to a judicially-supervised stipulated settlement); *Mohney*, 2009 U.S. Dist. LEXIS 17899, at *13 (finding in a "hybrid" wage and hour litigation "that the FLSA settlement is a fair and reasonable resolution of a *bona fide* dispute reached as a result of contested litigation.").

## VII.   Class Counsel's Request For Attorney's Fees And Reimbursement of Expenses Should Be Approved

Class Counsel seeks attorney's fees and reimbursement of expenses in the total amount of $170,000. In accordance with the Stipulation of Settlement, Defendants will not oppose Class Counsel's motion for an award of attorney's fees and expenses up to the maximum total amount of $170,000. Class Counsel seeks $157,728.74 in attorney's fees and $12,271.26 in expenses. Of this total amount, only $10,000 will be requested from the $100,000 fund established for the Class members who did not opt-in to the FLSA collective action.

Class counsel has prosecuted this action entirely on a contingency basis. Class Counsel has spent more than 828 attorney and paralegal hours prosecuting this case, for a total lodestar (hourly rates multiplied by hours spent) of $425,863.50. Anderson Decl. ¶ 30. Class Counsel's fee request is less than half their total lodestar and represents approximately 16% of the total Settlement Fund of $967,000.

The Second Circuit has articulated six factors to assess the reasonableness of a fee request in the class action context: (1) the time and labor expended by counsel; (2) the magnitude and

complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5)

the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*

*v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000). Applying the *Goldberger* factors here

strongly supports the award of attorneys' fees sought by Class Counsel.

## A.     The Time and Labor Expended

Class Counsel's lodestar through March 1, 2011 is approximately $425,863.50. This

reflects approximately 828 attorney and paralegal hours expended over more than two years of

litigation. Anderson Decl., ¶ 30. In calculating the lodestar, the "hours documented by counsel

need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather,

the "reasonableness of the claimed lodestar can be tested by the court's familiarity with the case."

*Id*. The work performed by Class Counsel in this action and the hourly rates charged are set forth

in the Anderson Declaration submitted herewith.[4] Here, Class Counsel's attorney's fee request

seeks only approximately 37%, or less than half, of the total lodestar. Class Counsel's fee

request in light of the total hours expended is more than reasonable.

## B.     The Magnitude and Complexity of the Litigation

The legal issues presented in this wage and hour action brought under FLSA and the New

York Labor Law are complex and difficult to prove. As the Supreme Court has recognized,

"FLSA claims typically involved complex mixed questions of fact and law. . . . These statutory

questions must be resolved in light of volumes of legislative history and over four decades of

---

[4]Should the Court require additional information, Class Counsel will provide the
underlying daily time records either *in camera* or in redacted form at the Court's direction.

legal interpretation and administrative rulings." *Barrentine v. Askansas-Best Freight Sys. Inc.,*

450 U.S. 728, 743 (1981). This complexity inherent in wage and hour cases weighs in favor of

approving Class Counsel's fee request. *See Frank,* 228 F.R.D at 189 (mixed questions of fact

and law support court's award of attorney's fees representing 38% of the common fund);

*Mohney,* 2009 U.S. Dist. LEXIS 27899, at *14-19 (awarding attorney's fees of 33% of the

common fund in FLSA and the New York Labor Law case brought on behalf of restaurant

workers).

### C.     Risk of Litigation

Class Counsel prosecuted this action entirely on a contingency basis, with no assurance of

being paid for their efforts. *See In re Crazy Eddie,* 824 F. Supp. 320, 326 (E.D.N.Y. 1993)

(awarding 33.8% of settlement fund as attorneys' fees; "[t]he attorneys' fees requested were

entirely contingent upon success. Class Counsel risked time and effort and advanced costs and

expenses, with no ultimate guarantee of compensation.").

The facts of this case presented substantial risks of recovery. The absence of accurate and

complete time records contributed to the complexity and risks of this action. Had litigation

continued and advanced to trial, each Plaintiff would have had to prove his damages through

individual testimony. Plaintiffs also would have had to prove that they worked the hours and

performed the tasks that they claimed, which would have involved a fact-intensive inquiry.

Plaintiffs' claims, moreover, undoubtedly would be disputed by Defendants' witnesses at trial,

giving rise to credibility issues and presenting significant risks of establishing liability and

damages. *See Brunson v. The City of New York,* 2000 U.S. Dist. LEXIS 18434, at *13 (S.D.N.Y.

Dec. 21, 2000) (where class counsel "faced significant obstacles in the lack of reliable means of verifying hours worked and tasks performed by individual plaintiffs," class counsel was entitled to a 50% premium for their achievement of a settlement.)

### D.      Quality of Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans,* 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007). As discussed above, the $967,000 all cash Settlement represents a very good recovery given the attendant risks of litigation, and Class Counsel is experienced in employment and class litigation. Anderson Decl. ¶24, Exhibit B.

### E.      The Fee Request In Light Of The Result Achieved

Class Counsel seeks attorney's fees and reimbursement of expenses of approximately 16% of the $967,000 Settlement Fund.  In the Second Circuit, courts commonly approve percentage awards of between 20% to 33.3% of the class recovery. *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care*, L.L.C., 504 F.3d 229, 249 (2d Cir. 2007) (affirming fees of 30% of recovery); *Mohney,* 2009 U.S. Dist. LEXIS 27899, at *16 (awarding fees of 33% of the fund in wage and hour litigation); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998) and cases cited therein (recognizing that 25 percent of the common fund is typically the benchmark for cases involving settlement funds from one to fifty million dollars.)  Where, as here, the common fund is less than $1 million, courts often find that requests for a greater percentage of the fund are reasonable.

*See, e.g., Frank,* 228 F.R.D. at 189 ("[D]ue to the relatively small settlement involved here [$450,000], the requested fee award [of 40%] is necessary to compensate counsel adequately,"); *Gilliam,* 2008 U.S. Dist. LEXIS 23016 at *15(S.D.N.Y. Mar. 24, 2008 (in overtime litigation, this Court held "the payment of attorneys fees under the settlement is reasonable.  It provides that class counsel is entitled to one-third of the common fund [of $450,000] after deduction of legal costs, which is consistent with the norms of class litigation in this circuit."); *Velez,* 2007 U.S. Dist. LEXIS 4622, at *25 (noting "the relatively small size of settlement fund" in granting a 31% fee award).

### F.   Public Policy Considerations

Public policy considerations weigh in favor of granting Class Counsel's fee request. Indeed, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999).  Both the FLSA and the New York Labor Law are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective to ensure that every employee receives "a fair day's pay for a fair day's work.").  The remedial purpose of these statutes is advanced by providing adequate compensation for attorneys who commence wage and hour litigation on behalf of employees. The class action device, moreover, also has been recognized as a safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  An adequate award to Class Counsel helps to ensure that "plaintiffs' claims [will] likely . . . . be heard." *Frank*, 228 F.R.D. at 189.  If courts denied "fees sufficient to compensate counsel for at least a substantial portion of the work

24

. . . performed, no attorneys. . . would likely be willing to take on . . . small-scale class actions[.]" *Id*.

Class Counsel's fee request of $157,728.74, or 16% of the Settlement Fund, and representing less than half Class Counsel's lodestar, is modest and reasonable and should be approved. Class Counsel's request for reimbursement of expenses of $12,271.26 incurred in the prosecution of this action also should be approved. Should the Court grant Class Counsel's fee and expense request, in accordance with the Stipulation of Settlement, Class Counsel will be paid by Defendants in installments over the same two and one half year payment period as the eligible claims of Class members who are Baluchi's former employees.

## VIII.  Conclusion

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant final approval of the Settlement, certify the Settlement Class, award Class Counsel's fees and expenses, and enter the accompanying proposed Final Judgment and Order.

Dated:  March 3, 2011
   New York, New York     G ISKAN S OLOTAROFF A NDERSON & S TEWART LLP

             By:  _Catherine E Anderson_

                 Catherine E. Anderson (CA 5129)
                 Darnley D. Stewart (DS 0835)
                 11 Broadway, Suite 2150
                 New York, NY 10004
                 (212) 847-8315

                 *Attorneys for Plaintiffs and the Class*

25