154SPATEL

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    GAUTAM PATEL, et al.,

4                    Plaintiffs,

5             v.                              08 Civ. 9985

6    BALUCHI'S INDIAN RESTAURANT,
     et al.,
7
                    Defendants.
8
     ------------------------------x
9
                                             May 4, 2011
10                                           2:30 p.m.

11   Before:

12                    HON. RICHARD J. SULLIVAN,

13                                           District Judge

14                         APPEARANCES

15   GISKAN, SOLOTAROFF, ANDERSON & STEWART, LLP
          Attorneys for Plaintiffs
16   BY:  CATHERINE E. ANDERSON, ESQ.
          ROBERT HERBST, ESQ.
17
     THOMPSON, WIGDOR & GILLY
18        Attorney for Defendants
     BY:  SCOTT B. GILLY
19

20

21

22

23

24

25

     SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

154SPATEL

1           (Case called)

2           MS. ANDERSON:  Catherine Anderson, Giskan, Solotaroff,

3   Anderson & Stewart, and Robert Herbst for plaintiffs.

4           THE COURT:  You are now with this firm?

5           MR. HERBST:  I am indeed.

6           THE COURT:  When did that happen?

7           MR. HERBST:  June of 2009.

8           THE COURT:  That is a long time ago.

9           MR. HERBST:  It has been 2 years.

10          THE COURT:  Good afternoon.

11          And for the defense?

12          MR. GILLY:  Scott Gilly with Thompson, Wigdor & Gilly.

13          THE COURT:  Good afternoon, Mr. Gilly.  Thanks for

14   coming back.

15          We were last here I guess about a month ago and at

16   that time I had expressed some concerns about the settlement

17   that was reached between the parties principally because it

18   seemed as though the non-opt-outs, the balance of the class,

19   were getting a very different deal than the opt-ins.  In some

20   sense I think one could conclude that it's two tiers of

21   settlement here, the opt-ins under the FLSA, collective action

22   for whom the settlement was done with Judge Katz, and the rest

23   of the class who were to basically be made whole through a

24   $100,000 set aside.  The point of the settlement being

25   negotiated wasn't clear how many class members were going to

1    turn up.

2             So there are now 18 I guess, right?

3             MS. ANDERSON:  That is correct, your Honor.

4             THE COURT:  Dividing $100,000, but with caps and other

5    methodologies to determine what each individual plaintiff is

6    going to get, but at least from what is represented to me it

7    seems that they are getting on average about a quarter of what

8    the opt-in plaintiffs are getting.  So I just think that that

9    is difficult to square both with Rule 23 and, more

10   particularly, with the Fair Labor Standards Act, which I don't

11   see it as really recognizing or contemplating such a two-tiered

12   arrangement for people whose causes of action are based on Fair

13   Labor Standard Act claims.

14            So I can go over with the parties what I have since

15   the last time I was here.  I have an April 12 letter from Ms.

16   Anderson which includes an attachment.  I have an April 15

17   letter from Ms. Anderson.  I issued my order on the 20th that

18   directed the parties to come in on the 29th of April and then

19   we adjourned that in light of the scheduling conflicts of

20   counsel.

21            We can chat about what we should do next but I think I

22   am prepared to just say that I can't approve this under the

23   FLSA and maybe ask you to go back and take another crack at it.

24   It's not clear to me what is the benefit of doing this as a

25   class action other than sweetening the deal for the defendants,

154SPATEL

 1   but if this were not a FLSA case that might be okay, but I

 2   think when it's a FLSA case it changes the entire analysis, but

 3   I am happy to hear you.

 4          MS. ANDERSON:  Your Honor, I don't disagree with your

 5   Honor's analysis at all.  Everything you said is 100 percent

 6   accurate.  The way the deal was negotiated was primarily with

 7   the FLSA opt-ins in mind.  It was only late in the negotiations

 8   that the provision was provided for the Rule 23 class.

 9   Everything you said is absolutely accurate.  I want to try to

10   get the best deal for everyone.

11          THE COURT:  I am not criticizing anyone.  I

12   understand.  You made a lot of these points last time and the

13   concerns you have is that certain class members might not be

14   around if this gets dragged out indefinitely.

15          MS. ANDERSON:  That and I still am very concerned

16   about collecting.  That is my primary concern.  Just recently

17   we have gone on to the New York Department of State website and

18   the entity Baluchi's Indian Restaurant is no longer doing

19   business.  Some of the other restaurants that we named are

20   doing business as Tiger Foods or Real Cong Goods or Kraj, some

21   of the other named defendants, are still nominally active on

22   the Department of State website as registered in New York but I

23   don't know what kind of assets those companies have.

24          My understanding is that the defendant is selling out

25   his ownership interest in the Baluchi's Restaurant.  This is

1 | from my clients.  I am just very concerned about collections

2 | and I understand your concerns about the settlement and my hope

3 | here is that whatever results will be done with expediency.

4 | The longer this case goes on, either in terms of trying to

5 | negotiate a settlement or moving towards trial, time is not in

6 | the plaintiffs' favor both from their personal lives trying to

7 | get on with their lives, trying to go home, or in terms of

8 | collections.

9 |      THE COURT:  I don't know enough about the financial

10 | condition of the defendants.  It may be that there are multiple

11 | defendants who given the fact that Baluchi's goes out of

12 | business doesn't mean the plaintiffs would be left high and

13 | dry.  But I am certainly sensitive to the points that you make.

14 |      Mr. Gilly maybe can speak to some of those points

15 | concerning the financial health of the defendants.

16 |      MR. GILLY:  Not very well, your Honor, other than my

17 | most current discussions with Mr. Agwal, who has been the

18 | principal contact for the defendant entities, and he also is

19 | individually named in this action and he has represented his

20 | intentions to comply fully with the settlement as ultimately

21 | ordered by the court if it were to be approved.  That is all.

22 | That is the extent of my knowledge of his financial affairs or

23 | the defendant entity's ongoing operations.

24 |      If I might just add one point in terms of just

25 | responding about how the settlement was negotiated, I do

154SPATEL

1    disagree with the notion that the class aspects of this

2    settlement were injected at the very end of the negotiations.

3    If I understood Ms. Anderson's point correctly, I do not agree

4    with that characterization.  From the defendants' perspective

5    throughout the negotiations we were always communicating a lump

6    sum payment that would result in a class-wide settlement.

7              THE COURT:  I can see why you want a class-wide

8    settlement and I don't disparage or impugn the motives at all.

9              MR. GILLY:  Nor do I, your Honor.  That wasn't what I

10   was suggesting.  I just was purely responding to the factual

11   point that the class-wide settlement was something that I think

12   was on the table throughout.  I am not impugning anyone's

13   motives either.  I think plaintiffs' counsel has done a fine

14   job in this case for the group that they are representing.

15             That is all I have to add, your Honor, unless you have

16   other questions for me.

17             THE COURT:  I don't think I do.  I am still a little

18   fuzzy in terms of how the individual damages are calculated.

19   What the papers make clear is that it's based on the same

20   criteria used to evaluate the FLSA opt-in plaintiff claims,

21   namely, the position held at Baluchi's, the number of weeks

22   worked, the number of hours worked per week, and the wages

23   earned per week.  And then it says the claims will be paid pro

24   rata up to a maximum of $8,000.  But it's not clear to me, and

25   there are 18 plaintiffs who are implicated or who by virtue of

        SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

154SPATEL

1   them responding making notices of claim have now access to this

2   $100,000 set aside.  If there had only been ten would the

3   individual award to those plaintiffs been higher?

4            MS. ANDERSON:  Yes, your Honor.

5            THE COURT:  That is what I thought.  So it's hard to

6   know when the settlement was negotiated whether there were

7   going to be 100 or 10 or somewhere in between plaintiffs who

8   wanted to be part of the settlement.  But I think that is a

9   pretty critical background in assessing whether somebody is

10  being asked to work for $2 an hour or $4 an hour or whatever

11  minimum wage is.  So I understand that there are litigation

12  risks and I understand there are collection risks, but I don't

13  think a court can approve a settlement that would have somebody

14  getting paid 50 cents an hour, even if the plaintiffs were

15  willing to do it, because the FLSA contemplates even though

16  plaintiffs might feel they don't have the leverage to demand

17  what they are entitled to courts and the Secretary of Labor

18  can't condone that kind of thing.

19            It's hard for me to say whether that is the case here.

20  It's just hard for me to know what are the litigation risks and

21  the other risks that would make 100 percent or 100 cents on the

22  dollar achievable and what that would mean in terms of an

23  hourly rate.  I don't have that now.

24            What makes the most sense is to ask you folks to go

25  back to the drawing board and to see whether you can resolve

1   the settlement in a way that alleviates some of these concerns.

2   Maybe that means eliminating as a class action, because I do

3   have questions as to whether a class action is a superior way

4   to do this.  I can understand why defendants would value having

5   the total piece that comes with a class action, but at the same

6   time I think the likelihood of follow-on suits is more remote

7   than it would have been at the time you were negotiating the

8   settlement because now we have had notice go out.  We have

9   probably the universe or close to the universe of claimants

10   that would have come forward.  So maybe that is one way to do

11   this.

12         And maybe another way to do this is to divide it up

13   differently and create a separate incentive payment to the

14   initial plaintiffs that is more along the lines of what a

15   traditional incentive payment is, which is generally a lump sum

16   as opposed to a percentage or a multiplier.  Because I really

17   couldn't find any case that was similar to this one in terms of

18   the incentive payment.

19         What I really have been looking at was the opt-in

20   plaintiffs' settlement, determining that was fair and doing a

21   separate analysis on fairness for the non-opt-ins, and they are

22   so different that it would be hard to say why the distinction

23   is fair even if the court were to recognize the appropriateness

24   or the propriety of some incentive award.  This is just not the

25   way it's usually done.

1          What do you think of that suggestion?

2          The benefit of not doing this as a class action is

3    that it could be more streamlined and the approval of the

4    plaintiffs involved would be done without an extended and a

5    lengthy notice period given the concerns Ms. Anderson

6    mentioned.  I don't want to tell you what to go do, but I am

7    just identifying for you my concerns.

8          MR. GILLY:  I think those are two of the three options

9    on the table, your Honor, the third being continued litigation

10   of the case if either of those two can't be worked out.  But I

11   think your Honor has correctly identified the two avenues of

12   salvaging this settlement and it's just a matter of I guess

13   counsel conferring with their respective clients and getting

14   back together to see if that is possible.

15         THE COURT:  Yes, I think that is right.  You may have

16   already done that to some extent since it's in my order.  But

17   you think you want to go back and chat with them?

18         MR. GILLY:  Certainly, your Honor.  I think that in

19   light of the court's comments today I would need to do that on

20   my end certainly and I would propose some reasonable amount of

21   time to accomplish that.  Again, I haven't conferred at all

22   with Ms. Anderson or Mr. Herbst about that process, but we can

23   either do that and propose something or I am sure your Honor

24   has a sense of what would be appropriate.

25         THE COURT:  I was going to propose about 30 days but

154SPATEL

1    even sooner would be better if you think you can manage it.  If

2    this thing were to just then go forward with the litigation,

3    then I think I would at least consider allowing in all the

4    class folks, the 18 coming in as plaintiffs on the FLSA

5    collective action so allowing an amended pleading that would

6    include them or just allowing them to be included on the FLSA

7    claims.  And then I guess we take it from there so they

8    wouldn't be high and dry.  They would be invited in with full

9    status.  That is my thought.

10           MR. HERBST:  Judge, just so your Honor understands why

11   we are concerned about ultimately collecting, we discovered I

12   guess on one of the court websites that defense counsel had

13   instituted a suit against a client for fees in the case.  That

14   is one aspect of it and so I did ask Mr. Gilly about that

15   before court and he said that they think they are working it

16   out, but it is an unusual circumstance when that happens.  So

17   it's one of the things out there in the background.  I just

18   wanted your Honor to be aware of it.

19           THE COURT:  I am aware of all these things.  You

20   weren't here last time but I think there is the need always to

21   be practical.  I am in sort of a tough spot because the FLSA is

22   almost unique.  The law generally presumes that parties are

23   grownups and they can work out settlements among themselves.

24   It's really not for courts to generally second guess them.

25           The FLSA really calls on courts to take on a very

154SPATEL

1    different role.  I think to be conscientious in taking on that

2    role I really have to get under the hood and take a look, and

3    that is what I have done here and it creates some concerns

4    about the issues I have raised.  But at the same time I am very

5    sensitive to the points Ms. Anderson has made.  I don't want to

6    be so scrupulous that everybody ends up off as a result, but

7    that is why I am hopeful there is a way toward creative,

8    thoughtful, and people who exercise good faith to alleviate the

9    concerns but still at the end of the day come up with a

10   solution that is in the interest of everybody, particularly the

11   plaintiff class because those are the ones who are entitled to

12   special deference under the FLSA more than other cases, more

13   than a securities client.  You are getting 2 pennies a share, I

14   will listen, but it's a different analysis than a case like

15   this one.

16          You think 30 days is going to get us any place?

17          MS. ANDERSON:  I think that is fine, your Honor.  And

18   the tighter schedule we can work on the better because --

19          THE COURT:  You want two weeks?

20          MS. ANDERSON:  That is fine with me.

21          THE COURT:  Mr. Gilly?

22          MR. GILLY:  I will certainly work as diligently as I

23   can, your Honor.  As an example, I don't know if Mr. Agwal is

24   even in the country at the moment.  I haven't had conversations

25   with him for several weeks.  He does go to India quite

154SPATEL

1    regularly for long periods of time when I am absolutely out of

2    communication with him so I would prefer to stick with the 30

3    days but with the understanding that we are not going to rest

4    on our laurels here.  We will move as promptly as possible to

5    try and address these issues, your Honor.

6            THE COURT:  Let me do this just to add a little

7    pressure.  I will order two weeks and if circumstances are such

8    that you think you need more time you can ask.  I think it's

9    worth obviously sharing with your client, to the extent you

10    haven't already, that the lack of records is usually something

11    that is a problem for the employer and the fact that there are

12    multiple defendants here so I don't know the fact that one

13    corporate defendant -- there are co-defendants.  Baluchi's is a

14    corporate defendant, is he not?

15            MS. ANDERSON:  Yes, and a number of entities doing

16    business as Baluchi's.

17            THE COURT:  So it's hard for me to know who is

18    judgment proof, who is not judgment proof, and what the

19    prospects are down the road, but it seems to me that there is

20    still a lot of incentive for the settlements or a version of

21    the settlement previously agreed to to get resuscitated,

22    amended as necessary, but ultimately consummated.  It would be

23    silly to walk away from what is, in essence, a $1 million

24    settlement.  I think it's silly to walk away from that now.  I

25    think it's salvageable, but as currently configured I don't

154SPATEL

1   think I can put the imprimatur of the court on it as I am

2   required to.  I say that with humility and I say that with

3   being very mindful of the fact that you have all worked hard on

4   this and that you have really acted in good faith and tried to

5   be very practical as well.

6         I should probably shut up and let you get to it.  So

7   two weeks puts us at the 15th.  Why don't I give you to the

8   Friday, so that is Friday the 20th.

9         MR. GILLY:  Very well.  Thank you.

10         MS. ANDERSON:  Thank you.

11         THE COURT:  Thank you all.

12         Mr. Herbst, good to see.

13         MR. HERBST:  Is there a time?

14         THE COURT:  I will ask you to send a letter and if you

15   propose different things let me know that too and depending on

16   what you tell me I will bring you back in or we will set a new

17   schedule or do something else.

18         THE COURT:  Okay.  Thanks again.

19         And let me thank the court reporter.

20

21

22                              - - -

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300